IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

**WILLIAM TWADDLE, et al.,**
**Plaintiffs,**

v.

**RKE TRUCKING COMPANY,**
**Defendant.**

**Case No. 2:04-CV-557**
**JUDGE EDMUND A. SARGUS, JR.**
**Magistrate Judge Norah McCann King**

## OPINION AND ORDER

This matter is before the Court for consideration of the Plaintiffs' Motion for Partial Summary Judgment (Doc. #29)[1] and the Defendant's Motion for Partial Summary Judgment (Doc. #31). For the reasons that follow, the Plaintiffs' motion is granted in part and denied in part and the Defendant's motion is denied.

## I.

Plaintiffs, William Twaddle, Philip Maynard, Richard Dennis, Timothy Elkins and Dwayne Ammon ["Plaintiffs"], bring this action against their former employer, RKE Trucking Company. Plaintiffs allege violations of the Fair Labor Standards Act ["FLSA"], 29 U.S.C. § 201, *et seq.* and the Ohio minimum wage and overtime law, R.C. § 4113.11, *et seq.* Plaintiffs also claim breach of contract and promissory estoppel under Ohio law. The Court has jurisdiction pursuant to 28 U.S.C. §§ 1331 and 1367.

---

[1] Plaintiff Philip Maynard also filed a Motion for Summary Judgment on the Defendant's counterclaim. (Doc. #27). This motion is rendered MOOT in light of Defendant's voluntary dismissal of the counterclaim. (Doc. #28).

Plaintiffs were employed by Defendant as truck drivers. Each of the Plaintiffs was dispatched with driving assignments from the Defendant's place of business in Westerville, Ohio. (*Complaint* at ¶ 7). Defendant is in the business of selling and delivering construction materials throughout the State of Ohio. (*Id.*). According to Plaintiffs, Defendant required them to report for work at 6:00 a.m., although Plaintiffs often did not begin their truck driving duties until 8:30 or 9:00 a.m. Plaintiffs were not compensated for reporting to work early. (*Id.* at ¶ 12). Plaintiffs also claim that, as of condition of employment, they were required to attend company meetings but were not compensated for their time during attendance. (*Id.* at ¶ 13). Plaintiffs also were allegedly not compensated for time required to submit to random drug tests. (*Id.* at ¶ 14). Plaintiffs further claim that, on many occasions, Defendant recorded Plaintiffs as taking a thirty-minute lunch period which was not counted as work time although Plaintiffs took no such lunch break. (*Id.* at ¶ 15).[2]

Plaintiffs claim that the foregoing incidents constitute violations of the FLSA, R.C. §§ 4111 and 4113.15(B), as well as breach of contract and promissory estoppel. The Plaintiff seeks partial summary judgment on Counts One (FLSA), Two (R.C. § 4111) and Three (R.C. § 4113.15(B)). Defendant moves for partial summary judgment on Count One.

## II.

The procedure for considering whether summary judgment is appropriate, is found in Fed. R. Civ. P. 56(c); this section provides:

---

[2]The facts are set forth in greater detail *infra*, in connection with analyzing Plaintiffs' claims for purposes of summary judgment.

> The judgment sought shall be rendered forthwith if the pleadings, depositions,
> answers to interrogatories and admissions on file, together with the affidavits, if
> any, show that there is no genuine issue as to any material fact and that the
> moving party is entitled to judgment as a matter of law.

The evidence must be viewed in the light most favorable to the nonmoving party. *Adickes v.*

*Kress & Co.*, 398 U.S. 144, 158-59 (1970). Summary judgment will not lie if the dispute about a

material fact is genuine; "that is, if the evidence is such that a reasonable jury could return a

verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

Summary judgment is appropriate however, if the opposing party fails to make a showing

sufficient to establish the existence of an element essential to that party's case and on which that

party will bear the burden of proof at trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986);

*see also, Matsushita Electronic Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574 (1986).

The United States Court of Appeals for the Sixth Circuit has recognized that *Liberty*

*Lobby, Celotex,* and *Matsushita* have effected "a decided change in summary judgment practice,"

ushering in a "new era" in summary judgments. *Street v. J.C. Bradford & Co.*, 886 F.2d 1472,

1476 (6th Cir. 1989). The court in *Street* identifies a number of important principles in new era

summary judgment practice. For example, complex cases and cases involving state of mind

issues are not necessarily inappropriate for summary judgment. *Id.* at 1479.

In addition, in responding to a summary judgment motion, the nonmoving party "cannot

rely on the hope that the trier of fact will disbelieve the movant's denial of a disputed fact, but

must 'present affirmative evidence in order to defeat a properly supported motion for summary

judgment.'" *Id.* (quoting *Liberty Lobby*, 477 U.S. at 257). The nonmoving party must adduce

more than a mere scintilla of evidence in order to overcome the summary judgment motion. *Id.*

3

It is not sufficient for the nonmoving party to merely "'show that there is some metaphysical doubt as to the material facts.'" *Id.* (quoting *Matsushita*, 475 U.S. at 586). Moreover, "[t]he trial court no longer has the duty to search the entire record to establish that it is bereft of a genuine issue of material fact." *Id.* That is, the nonmoving party has an affirmative duty to direct the Court's attention to those specific portions of the record upon which it seeks to rely to create a genuine issue of material fact.

### III.

#### A. Count One- FLSA

Both parties seek summary judgment on Plaintiffs' Count One, alleged violation of the FLSA. Defendant concedes violations with respect to Plaintiffs' claims regarding time for attendance of company meetings and submitting to random drug tests. Defendant, however, disputes the extent of damages on these claims, arguing that genuine issues of material fact exist. With respect to Plaintiffs' claims regarding early start time and lunch time breaks, the Defendant disputes liability, while Plaintiffs seek summary judgment. Both Plaintiffs and Defendant seek summary judgment on the appropriate statute of limitations as to Plaintiffs' claims under the FLSA. In addition, Defendant contends that Plaintiffs are not entitled to liquidated damages. The Court considers these issues separately, addressing the statute of limitations issue first.

#### 1. Statute of Limitations

The parties dispute whether a three or two year statute of limitations applies to Plaintiffs' claims. The relevant provision states that an action is to be commenced "within two years after

4

the cause of action accrued . . . except that a cause of action arising out of a willful violation may be commenced within three years after the cause of action accrued." 29 U.S.C. § 255(a). Plaintiffs argue that the three year exception applies in this case and Defendant argues that the two year period is applicable.

In *McLaughlin v. Richland Shoe Co.*, 486 U.S. 128 (1988), the United States Supreme Court held that, in order apply the three year limitations period, it must be shown that the employer acted willfully, meaning that "it knew or *showed reckless disregard for the matter of whether* its conduct was prohibited by the FLSA." *Id.* at 130, quoting *Brock v. Richland Shoe Co.*, 799 F.2d 80, 83 (3rd Cir. 1986) (emphasis in original). The court noted that the term "willful" is synonymous with the terms "voluntary," "deliberate" and "intentional," and the legal meaning is "generally understood to refer to conduct that is not merely negligent." *Id.* at 132-33.

The Sixth Circuit has found a violation to be willful where the evidence was undisputed that the employer had "actual notice of the requirements of the FLSA by virtue of earlier violations, his agreement to pay unpaid overtime wages, and his assurance of future compliance with the FLSA." *Dole v. Elliott Travel & Tours, Inc.*, 942 F.2d 962, 967 (6th Cir. 1991) (citation omitted). In *Takacs v. Hahn Automotive Corp.*, 1997 WL 1774922 (S.D. Ohio April 16, 1997) (Rice, J.), this Court held that simply showing that the Defendant had actual notice of the requirements of the FLSA is insufficient to satisfy the willfulness standard. "Instead, there must be evidence sufficient to create a genuine issue of material fact as to whether the Defendant 'knew or showed reckless disregard' as to its violation of the FLSA." *Id.* at *9. The issue of willfulness "is to be treated the same as any other factual determinations routinely submitted to a jury." *Kowalski v. Kowalski Heat Treating Co.*, 920 F.Supp. 799, 805 (N.D. Ohio 1996), citing

5

*Fowler v. Land Management Groupe, Inc.*, 978 F.2d 158, 163 (4th Cir. 1992).

For statute of limitations purposes, a cause of action under the FLSA accrues "at each regular payday immediately following the work period during which the services were rendered for which the wage or overtime compensation is claimed." *Archer v. Sullivan County, Tenn.*, 1997 WL 720406 at *2 (6th Cir. Nov. 14, 1997), quoting *Halferty v. Pulse Drug Co., Inc.*, 821 F.2d 261, 271 (5th Cir.), modified on other grounds, 826 F.2d 2 (5th Cir.1987). In addition, the alleged failure of an employer to pay overtime in accordance with the FLSA constitutes a continuing violation, meaning that a new cause of action accrues with each paycheck. *Gandy v. Sullivan County, Tenn.*, 24 F.3d 861, 864 (6th Cir.1994).

In this case, Plaintiff Twaddle was employed from April 2001 to April 2003; Plaintiff Maynard was employed from October 1990 to November 13, 2003; Plaintiff Dennis was employed from April 15, 2001 to January 2003; Plaintiff Elkins was employed from November 1999 to April 30, 2004; and Plaintiff Ammon was employed from April 2000 to April 9, 2004. (*Complaint* at ¶¶ 2-6). The instant action was filed on June 29, 2004. Defendant argues that Plaintiffs should be prohibited "from realizing any alleged unpaid wages or overtime prior to June 29, 2002, two years before the date of their filing of this action." (*Defendant's Motion for Partial Summary Judgment* at 10). Plaintiffs argue that a three year period applies.

Plaintiffs argue that Defendant willfully violated the FLSA. In support of their position, Plaintiffs point to the deposition testimony of Mr. Diem and Mr. James Kibler, Defendant's Vice President and General Manager. Diem testified that he is aware of the requirement to pay employees an hourly wage and time and a half for work over forty hours per week. (*Diem Depo.* at 22-23). Kibler testified that he is also aware of the same. (*Kibler Depo.* at 41). According to

6

Plaintiffs, the foregoing shows that Defendant willfully violated the FLSA.

As noted above, simply establishing Defendant's knowledge of the requirements of the FLSA is insufficient to establish a willful violation of the law.   At this juncture, the question is whether there is evidence sufficient to create a genuine issue of material fact as to whether the Defendant "knew or showed reckless disregard" as to the alleged violation of the FLSA.  As Defendant points out, this can be established by evidence of earlier violations of the FLSA, an agreement to pay unpaid overtime wages, and an assurance of future compliance with the FLSA. *See Dole v. Elliott Travel & Tours, Inc.*, 942 F.2d 962, 967 (6th Cir. 1991).  There is no evidence of any of these occurrences in the case at bar.

Plaintiff argues that willfulness can be established through the Defendant's alleged failure to maintain accurate records regarding Plaintiffs' hours of work[3].  Plaintiffs rely on the Sixth Circuit case of *Elwell v. University Hospitals Home Care Services*, 276 F.3d 832 (6th Cir. 2002), in support of their argument.  In *Elwell*, the court stated:

> Although the FLSA does not permit an employee to bring a private action for recordkeeping violations, an employer's recordkeeping practices may nonetheless corroborate an employee's claims that the employer acted willfully in failing to compensate for overtime. *See, e.g., Majchrzak v. Chrysler Credit Corp.*, 537 F.Supp. 33, 36 (E.D.Mich.1981) (finding willful violation of overtime provisions where company policy of not recording "compensation time" earned for working in excess of forty hours per week was "susceptible to abuse and indeed was abused herein"). For example, the fact that an employer knowingly under-reported its employee's work hours could suggest to a jury that the employer was attempting to conceal its failure to pay overtime from regulators, or was acting to eliminate evidence that might later be used against it in a suit by one of its employees. If so, this evidence would make it more likely that the employer was aware of a substantial risk that its activities violated the FLSA, and acted in conscious disregard of that risk. *See Marshall v. Sam Dell's Dodge Corp.*, 451

---

[3] Plaintiffs argue that because Defendant failed to record Plaintiffs' time that is the subject of this lawsuit, Defendant has kept inaccurate records.

F.Supp. 294, 301 (N.D.N.Y.1978).

*Id.* at 844.

The Court concludes that Plaintiffs' challenge to the accuracy of Defendant's recordkeeping methods supports their claim that Defendant acted willfully in allegedly violating the FLSA. The issue must, however, be resolved by the trier of fact. At this juncture, the Court simply concludes that a genuine issue of material fact exists as to whether any violation allegedly committed by the Defendant was willful. The trier of fact must determine whether a two or three year statute of limitations applies to Plaintiffs' claims. The Court declines to award summary judgment to either party on the statute of limitations issue.

### 2. Early Start Time

Plaintiffs seek compensation for allegedly being required to report to work by 6:00 a.m. The Defendant's Employee Handbook states, in relevant part:

> Drivers Daily Responsibilities
> 1. Arrive to work and have your truck ready to **leave the shop by 6 A.M.** unless otherwise specified by Ed or Tim. . . .
> 2. Clock in before leaving.

(Employee Handbook at 502294). The Handbook further provides that disciplinary action or immediate discharge may be taken for, *inter alia*, "[h]abitually failing to be at the work place and ready to work at the agreed upon starting time." (*Id.* at 500038). According to Edward Diem, President of Defendant RKE, reporting to work at 6:00 a.m. is a "general rule of thumb" for employees. (*Diem Depo.* at 37).

Plaintiffs aver that, when they were hired, Mr. Diem informed them that they were

8

required to report to work by 6:00 a.m. so that work orders could be placed and processed. (*Maynard Affidavit* at ¶ 4; *Elkins Affidavit* at ¶ 4; *Twaddle Affidavit* at ¶ 4; *Dennis Affidavit* at ¶ 4). According to Plaintiffs, the "vast majority of RKE's truck drivers reported for work between 5:45 a.m. and 6:00 a.m. each work day." (*Id.*). Upon arriving, Plaintiffs started the engines of their trucks to circulate air pressure and fluid to ensure a smooth run. (*Id.* at ¶ 5). Plaintiffs then performed pre-trip inspections of the trucks, checking the tires, oil and fluids. (*Id.* at ¶ 6). Following these checks, the Plaintiffs reported to Defendant's dispatch office to await receipt of a driving assignment. (*Id.* at ¶ 7). Plaintiffs claim that oftentimes, they could not leave right after receiving an assignment because many locations to which they were dispatched allegedly did not open until 7:00 a.m[4]. (*Id.*). Plaintiffs also claim that dispatchers did not always have job assignments ready or had changes in work orders, causing Plaintiffs to leave as late as 8:30 or 9:00 a.m. (*Id.*). Plaintiffs argue that their compensation should begin from the time they were required to report to work.

In response, Defendant argues that Plaintiffs should not receive compensation because the majority of activities Plaintiffs performed before they began dispatch duties were allegedly preliminary and not primarily for the Defendant's benefit. According to the Defendant, Plaintiffs spent approximately five minutes starting their trucks and the remainder of time was spent socializing with fellow drivers and drinking coffee and pop. (*Maynard Depo.* at 182-83; *Elkins Depo.* at 91-92; *Twaddle Depo.* at 43, 49; *Dennis Depo.* at 41, 44, 48). Defendant argues that Plaintiffs made the choice to socialize and could have left earlier for their work assignments if

---

[4]Plaintiffs did not load any materials at RKE. Pursuant to the work orders, Plaintiffs were dispatched to quarry destinations to pick up gravel.

they desired. Defendant also contends that the requirement that Plaintiffs report to work at 6:00 a.m. is not dispositive; rather,  Defendant argues that the determinative issue is whether the Plaintiffs' time was spent for the Defendant's benefit.

The FLSA requires employers to pay at least a specified minimum wage for each hour worked, see 29 U.S.C. § 206, and overtime compensation for employment in excess of forty hours in a workweek. 29 U.S.C. § 207(a)(1). The term"work" is not defined in the statute but the Supreme Court has held that work includes any time "controlled or required by the employer and pursued necessarily and primarily for the benefit of the employer and his business." *Tennessee Coal, Iron & R. Co. v. Muscoda Local No. 123*, 321 U.S. 590, 598 (1944) (footnote omitted). The Portal to Portal Act, which amends the FLSA, modified this definition to exclude from compensation activities that are "preliminary to or postliminary to said principal activity or activities." 29 U.S.C. § 254(a)(2); *Aiken v. City of Memphis*, 190 F.3d 753, 758 (6th Cir.1999).

An employee may engage in more than one "principal activity" during the work day. To be a "principal activity" does not mean that the activity must predominate over all other activities. See 29 C.F.R. § 790.8(a).  In addition, the activity does not necessarily need to occur during normal work hours in order to constitute a "principal activity."  The caselaw makes clear that an integral and indispensable activity can take place before or after an employee's regular work hours. *See Steiner v. Mitchell*, 350 U.S. 247 (1956) (holding that changing clothes and showering are integral and indispensable to the principal work of battery factory workers who used toxic materials and were required to change and shower in facilities that the employer provided in accordance with state law); *Mitchell v. King Packing Co.*, 350 U.S. 260 (1956) (holding that time spent by meat company butchers sharpening their knives are an integral and

10

indispensable part of principal activities); *Barrentine v. Arkansas-Best Freight Sys., Inc.*, 750 F.2d 47 (8th Cir.1984) (holding that truck drivers' time spent on pre-shift safety inspections are integral and indispensable part of principal work activity).

The Court concludes that Plaintiffs' early start time duties in this case are compensable for purposes of the FLSA. It is undisputed that Defendant required Plaintiffs to report to work by at least 6:00 a.m. Further, any failure to report was subject to disciplinary action, including discharge for employees who habitually reported late. In the Court's view, this requirement, coupled with Plaintiffs' duties of starting the engines of their trucks, performing pre-trip inspections of the trucks and awaiting the receipt of driving assignments are all integral and indispensable to the Plaintiffs' principal work activity. The fact that Plaintiffs may have also spent time conversing with other employees, and drinking coffee and pop during the course of their early start time does not alter the fact that the duties performed were primarily for the Defendant's benefit.

The Court rejects Defendant's argument that the time spent awaiting driving assignments is not compensable because Plaintiffs were "waiting to be engaged." Whether time spent waiting is compensable is determined by a two part test.

> First, the Court considers whether wait time is predominantly for the employer's benefit, and waiting time benefits an employer if the employer requests it. *See Wirtz v. Sullivan*, 326 F.2d 946, 948-49 (5th Cir.1964) (requiring an employer to compensate employees for waiting time while machines were being fixed). Second, the Court considers whether the employees can effectively use the waiting time for their own purpose. *See Mireles v. Frio Foods, Inc.*, 899 F.2d 1407, 1413-14 (5th Cir.1990) (concluding that periods of waiting time up to forty-five minutes during assembly line shut down were compensable). If employees are "completely relieved from duty" for a period that is long enough for them to use the time for their own purposes, then they are off duty, and the time is not compensable. 29 C.F.R. § 785.16(a).

11

*Chao v. Akron Insulation & Supply, Inc.*, 2005 WL 1075067 at *9 (N.D. Ohio 2005) (Gwin, J.).

In this case, the Court first finds that the time Plaintiffs spent waiting for driving assignments is predominantly for Defendant's benefit. Second, the Court finds that Plaintiffs could not have used this time for their own purposes. Plaintiffs were required to be at work by 6:00 a.m. As found by the district court in *Chao*, this Court finds that the fact that Plaintiffs may have also conversed with fellow employees, and consumed coffee or pop while waiting does not alter the analysis. Accordingly, the Court concludes that Plaintiffs are entitled to summary judgment on their claim seeking compensation for early start time.

### 3. Lunch Time Breaks

Plaintiffs Maynard, Elkins and Twaddle seek compensation for thirty minute lunch time break time which Defendant subtracted from their daily work hours. Plaintiffs claim that they typically worked all day performing their duties as truck drivers without taking a twenty minute or longer break.

Plaintiff Twaddle avers that his work schedule "varied such that I often was unable to stop work for a 30-minute break during the day for lunch." (*Twaddle Affidavit* at ¶ 13). Twaddle further avers that between April 2001 and April 2003, he "reasonably estimate[s] that [he] received a break of twenty minutes or longer during my work day no more than once per week." (*Id.* at ¶ 14).

Plaintiff Maynard avers that his schedule was such that he was unable to stop for a thirty minute lunch break. When he did take a break, Maynard states that he "usually stopped at a convenience store to purchase a soda and a snack, but [he] did not stop more than 15 minutes to

12

do this." (*Maynard Affidavit* at ¶ 13). Maynard avers that he would consume the snack while driving to the next assignment. (*Id.*). Maynard further avers that prior to December 2001, Defendant permitted him to write "NL" on his timecard, designating that he did not take a lunch that day. According to Maynard, in December 2001, Defendant "changed its policy and instructed all of us truck drivers not to make any written notation of missed lunches on our timecards." (*Id.* at ¶ 14). Maynard estimates that between December 2001 and 2003, he "received a break of 20 minutes or longer on fewer than ten occasions." (*Id.* at ¶ 15).

Plaintiff Elkins avers that he too was unable to stop for breaks that were twenty minutes or longer. Elkins states: "I usually packed my lunch and ate it while I drove my truck to one of my assigned job sites." (*Elkins Affidavit* at ¶ 13). Like Plaintiff Maynard, Elkins states that he was permitted to write "NL" on his timecard prior to December 2001. (*Id.* at ¶ 14). According to Elkins, "between December 2001 and 2004, I reasonably estimate that I received a break of 20 minutes or longer during no more than twice per month." (*Id.* at ¶ 15).

The FLSA requires that employers pay overtime wages for "hours worked" that are in excess of forty hours. A "bona fide meal period" is not included in "hours worked" unless the employee is "required to perform any duties," or is "not completely relieved from duty." 29 C.F.R. § 785.19(a). In *Hill v. United States*, 751 F.2d 810 (6th Cir. 1984), the Sixth Circuit set forth the standard for determining whether a meal period is compensable for purposes of the FLSA. The court held that "[a]s long as the employee can pursue his or her mealtime adequately and comfortably, is not engaged in the performance of any substantial duties, and does not spend time predominantly for the employer's benefit, the employee is relieved of duty and is not entitled to compensation under the FLSA." *Id.* at 814. The employee "bears the burden of

13

proving that he or she performs substantial duties and spends his or her meal time predominantly for the employer's benefit." *Myracle v. General Electric Co.*, 1994 WL 456769 at *4 (6th Cir. 1994) (citations omitted).

In *Myracle*, Plaintiffs were maintenance mechanics employed at a General Electric plant facility that manufactures light bulbs for use in automobiles. Plaintiffs were responsible for overseeing the operation of complex machinery during the manufacturing process. Plaintiffs were also responsible for the quantity and quality of the product produced. These responsibilities did not cease during the work shift and continued through the Plaintiffs' unpaid twenty minute meal period. Plaintiffs were generally free to choose the time and location (the cafeteria, one of several break rooms, or off-site) for their meal and were not required to clock out. Plaintiffs used a "buddy system" during breaks, by which another mechanic would check on the absent mechanic's machine. Most often, mechanics chose to take meals at the break room closest to their machine in case a problem arose. Plaintiffs sought compensation for their twenty minute breaks, arguing that the time spent was predominantly for the employer's benefit. The district court disagreed and this decision was affirmed by the Sixth Circuit. The court reasoned:

> Plaintiffs seek to make the question of whether the employer receives any benefit during the employees' meal breaks the only factor in this analysis, when there is clearly another inquiry that must be made: "Is the employee engaged in the performance of any substantial duties?" The question is not simply whether General Electric receives benefit during the plaintiffs' meal break, for it clearly does; the automated production machines, barring breakdown or emergency, continue to produce lamps whether or not the plaintiffs maintain their vigil. Therefore, in this case, the crucial question is whether plaintiffs are engaging in substantial duties during their meal periods in order to maintain this production. We note that substantial duties need not be more than waiting for something to happen, or "[r]eadiness to serve...." *Armour [& Co. v. Wantock]*, 323 U.S.[126,] 133 [(1944)]. However, after a careful review of the record and the district court's factual findings, we join the district court in determining that, in this case, the

14

> plaintiffs are not required to engage in any substantial duties during their meal
> breaks. Within loose limits, plaintiffs are free to choose the time and place of their
> meal periods. Further, they are neither required nor allowed to perform their work
> duties during this time. To the extent that plaintiffs are occasionally interrupted by
> an emergency or power outage, these interruptions are *de minimis* and do not
> render the meal period compensable. *See Anderson v. Mt. Clemens Pottery Co.*,
> 328 U.S. 680, 692 (1946); *Hill*, 751 F.2d at 815.

*Id.* at *5.

In contrast, Plaintiffs in the case at bar aver that they continued performing their normal

duties, *i.e.* driving to work order destinations, during their meal times. Plaintiffs aver that the

schedules were such that fulfillment of their work orders precluded them from taking twenty

minute meal breaks on most occasions.

Nevertheless, Defendant argues that issues of fact remain as to Plaintiffs' break time.

Defendant points to the deposition testimony of Plaintiff Elkins and Twaddle in this regard[5].

Twaddle testified on deposition that a "few times" he reported to the dispatcher that he would

stop and get food to go. (*Twaddle Depo.* at 73). Elkins testified that shortly before he left

employment with Defendant, he and three other employees working on the same hauling job

stopped at a Wendy's restaurant for lunch and discussed employment issues. (*Elkins Depo.* at

129-30).

In the Court's view, the deposition testimony on which Defendant relies does not create a

genuine issue of material fact[6] as to Plaintiffs' claims that their duties prevented them from

---

[5]The Court notes that Defendant also cites the deposition testimony of Plaintiff Dennis. The Court disregards this testimony since Plaintiffs make clear that only Plaintiffs Maynard, Twaddle and Elkins are seeking compensation for lunch time breaks.

[6]The Court also fails to find, as Defendant argues, that the deposition testimony is contradictory to the testimony given by way of affidavits.

15

taking the thirty minute breaks which Defendant recorded. The undisputed evidence shows that Plaintiffs took time to eat at the same time they were engaged in their primary job duties. Thus, in the Court's view, the Plaintiffs' lunch time break was predominantly for the employer's benefit and Plaintiffs are entitled to compensation under the FLSA. The Court finds Plaintiffs motion for summary judgment on this issue meritorious.

### 4. Damages for Claims regarding Attendance of Company Meetings and Random Drug Tests

As indicated *supra*, Defendant concedes liability under the FLSA for Plaintiffs' time spent attending company meetings and taking random drug tests. Defendant argues, however, that there are inconsistencies in Plaintiffs' affidavits and deposition testimony which give rise to genuine issues of material fact as to the extent of damages.

With respect to attendance of company meetings, Plaintiff Maynard avers:

> During 2001 and 2002, RKE's company meetings usually took place on the third Thursday of every month. Then, beginning in about April 2003, RKE's company meetings were usually held on the third Thursday of every other month. At these company meetings, which lasted about an hour, RKE's managers discussed work-related matters. However, RKE did not pay me any wages or overtime pay for my time in attending these meetings.

(*Maynard Affidavit* at ¶¶ 9-10). Maynard was employed from October 1990 to November 2003. On deposition, Maynard testified that he could not recall how many meetings there were in 2002-2003 but he recalled "several." (*Maynard Depo.* at 208). When questioned further, Maynard defined "several" as "[e]ight, give or take." (*Id.*). From April 2003 to the time he was terminated in November 2003, Maynard testified that there were "three to four" company meetings he attended. (*Id.* at 209).

16

In the Court's view, the deposition testimony is not inconsistent with Plaintiff Maynard's affidavit. When considering the deposition testimony in its entirety, it is apparent that Plaintiff's estimates were the result of the persistent questioning by counsel. In the absence of evidence to contradict Plaintiff Maynard's averments as to when company meetings were held, the Court finds no genuine issues of material fact in this regard.

As to Plaintiff Elkins, Defendant notes that in his affidavit, Elkins states that he took at least eight random drug tests between 2001 and 2004 and these tests lasted "about two hours." (*Elkins Affidavit* at ¶ 12). This included "time spent traveling to and from, and undergoing the drug tests." (*Id.*). On deposition, Elkins testified that on two occasions (11-7-01 and 11-14-01) he indicated on his timecard that the drug test took five hours. (*Elkins Depo.* at 183). After further questioning, Plaintiff stated that he was uncertain whether five hours was correct or whether the time was two hours. (*Id.* at 190-91). The issue appears moot, however, as a complete reading of the deposition testimony reveals that Plaintiffs agreed to stipulate that the time taken on the dates of 11-7-01 and 11-14-01 was two hours. (*Id.* at 194). Thus, the Court finds no genuine issues of material fact in this regard.

As to Plaintiff Twaddle, Defendant points out that, in his affidavit, he states that he was required to submit to "at least two random drug tests, each of which took about two hours, including my time spent traveling to and from, and undergoing the drug tests." (*Twaddle Affidavit* at ¶ 12). On deposition, Twaddle recalled undergoing a total of five drug tests. (*Twaddle Depo.* at 71). A further reading of the deposition testimony reveals that Plaintiff clarified that his earlier indication by way of a damages chart indicating two drug tests was incorrect. (*Id.* at 91). Plaintiff's counsel indicated on the record that a supplement would be

17

provided to correct this error. (*Id.*). Thus, the Court fails to find that Plaintiff Twaddle's affidavit and deposition testimony are inconsistent. Further, Defendant fails to point to any evidence of its own records to indicate that Plaintiff's number of five drug tests is not accurate. Contrary to Defendant's argument, the Court finds no genuine issue of material fact in regard to the days Twaddle submitted to drug tests.

As to Plaintiff Dennis, Defendant notes that in his affidavit Dennis states that in 2001 and 2002, company meetings were usually held on the third Thursday of every month. Beginning in April 2003, the meetings were held on the third Thursday of every other month. (*Dennis Affidavit* at ¶ 9). On deposition, Dennis could not recall the foregoing schedule but knew that meetings were held on Thursdays. (*Dennis Depo.* at 70). The Court does not view this testimony as creating a genuine issue of material fact as to when meetings were held.

In further support of its assertion that genuine issues of material fact as to damages exist, Defendant relies on the deposition testimony of James Kibler, Vice President and General Manager of RKE, who testified that over a period of three or four years, there were twelve company meetings. (*Kibler Depo.* at 77). Kibler also testified, however, that specific dates can be found on Defendant's records. (*Id.*). In the Court's view, this testimony raises no genuine issues of material fact as to Plaintiff's claims. The records are in Defendant's possession and if the records diverge with Plaintiff's testimony, Defendant could point out the same. Defendant has not done this.

Finally, Defendant points to the deposition testimony of another employee truck driver, John Weaver. Weaver states that company meetings are held "once every couple months or so" and lasted "maybe a half hour, maybe 45 minutes." (*Weaver Depo.* at 35). Again, the Court fails

to find a genuine issue of material fact as a result of this testimony. The records as to the dates and times for company meetings are in Defendant's possession. Defendant does not contend that Plaintiffs' testimony contradicts these records.

For these reasons, the Court finds no genuine issues of material fact as to Plaintiffs' damages claims for time spent attending company meetings and submitting to random drug tests. To the extent Defendant seeks to avoid summary judgment on these issues, the Defendant's position is without merit.

As a final matter with respect to damages, the Court observes that Defendant has presented no evidence, at this juncture, to refute the estimates of damages to which Plaintiffs claim they are entitled. In *Herman v. Palo Group Foster Home, Inc.*, 183 F.3d 468, 472 (6th Cir. 1999),the court stated:

> A plaintiff generally has the burden of proving that his employer violated the FLSA. However, where the employer's records are inaccurate or inadequate ... an employee has carried out his burden if he proves that he has in fact performed work for which he was improperly compensated and if he produces sufficient evidence to show the amount and extent of that work as a matter of just and reasonable inference. The burden then shifts to the employer to come forward with evidence of the precise amount of work performed or with evidence to negative the reasonableness of the inference to be drawn from the employee's evidence. If the employer fails to produce such evidence, the court may then award damages to the employee, even though the result be only approximate. *Anderson v. Mt. Clemens Pottery Co.*, 328 U.S. 680, 687-88(1946) (quoted and reaffirmed in *United States Dep't of Labor v. Cole Enters., Inc.*, 62 F.3d 775, 779 (6th Cir.1995)), superseded by statute on other grounds as stated in *Carter v. Panama Canal Co.*, 463 F.2d 1289, 1293 (D.C.Cir.1972).

The Court notes that Defendant's motion for summary judgment is based on the contention that it is not liable for violation of the FLSA, with the exception of time spent for attending company meetings and submitting to drug tests. In view of the Court's ruling that

19

Defendant is in fact liable on all of Plaintiffs' claims, the Court will permit Defendant, if it so desires, to dispute Plaintiff's evidence as to damages[7]. Defendant may file a supplemental motion for summary judgment in this regard within twenty (20) days of the date of this Order.

### 5. Liquidated Damages

Defendant moves for summary judgment on Plaintiffs' claim for liquidated damages under 29 U.S.C. § 216(b). This provision states, *inter alia*, that an employer who violates the FLSA "shall be liable to the employee or employees affected in the amount of their unpaid minimum wages, or their unpaid overtime compensation, as the case may be, and in an additional equal amount as liquidated damages. . . ."

In *Martin v. Indiana Michigan Power Co.*, 381 F.3d 574 (6th Cir. 2004), the Sixth Circuit observed:

> Liquidated damages under the FLSA "are compensation, not a penalty or punishment." *Elwell v. Univ. Hosp. Home Care Serv.*, 276 F.3d 832, 840 (6th Cir.2002) (internal quotes omitted). Although liquidated damages are the norm and have even been referred to as "mandatory," *see, e.g., Martin v. Cooper Elec. Supply Co.*, 940 F.2d 896, 907 (3rd Cir.1991) (emphasis in original), Congress has provided the courts with some discretion to limit or deny liquidated damages. See 29 U.S.C. § 260; *Martin*, 940 F.2d at 907. Under this exception, if an employer demonstrates both good faith and reasonable grounds for the incorrect classification, then a court may exercise its discretion to limit or deny liquidated damages. *Elwell*, 276 F.3d at 840; *Martin*, 940 F.2d at 907. But "[t]his burden on the employer is substantial," *Elwell*, 276 F.3d at 840, and if the employer fails to carry it, the court may not limit or deny liquidated damages. *Elwell*, 276 F.3d at 840; *Martin*, 940 F.2d at 907.
>
> To prove that it acted in good faith, an employer "must show that [it] took

---

[7]In its Memorandum *contra*, Defendant makes reference to the standard for disputing estimates of damages but argues that the issue cannot be considered because Plaintiffs had allegedly not proved liability. (Memorandum *contra* at 32).

> affirmative steps to ascertain the Act's requirements, but nonetheless violated its provisions." *Martin*, 940 F.2d at 908. "Good faith" means more than merely not willfully misclassifying the employee. *Elwell*, 276 F.3d at 841 n. 5. The employer has an affirmative duty to ascertain and meet the FLSA's requirements, and an employer who negligently misclassifies an employee as exempt is not acting in good faith. *Id.*

*Id.* at 584.

As Defendant points out, a finding that the employer acted willfully in violating the FLSA, as discussed *supra*, in connection with the statute of limitations issue, "forecloses the possibility of finding that the employer acted in good faith. . . ." *Elwell*, 276 F.3d at 842, n.5 (citation omitted). Furthermore, a finding that the employer "acted negligently- - but not willfully- - in violating the FLSA would not be able to satisfy the objective standard of reasonableness required to demonstrate good faith" so as to avoid liquidated damages. *Id.*

In this case, Defendant's motion for summary judgment is premised on the theory that there is no evidence to show a willful violation on its part of the FLSA. Defendant relies on the arguments made in connection with the statute of limitations issue in support of its position. According to Defendant, because there is no evidence of willfulness, it cannot be held liable for liquidated damages.

As the Court discussed *supra*, whether Defendant's conduct was willful is a matter to be resolved by the trier of fact. If Defendant's conduct is found to have been willful, then Defendant is not able to avoid liquidated damages. At this juncture, however, the Court concludes that genuine issues of material fact preclude a decision on Plaintiffs' claim for liquidated damages.

## B. Counts Two and Three - Ohio Law

In addition to their claim for violation of the FLSA, Plaintiffs also move for summary judgment on Counts Two(R.C. § 4111) and Three (R.C. § 4113.15(B)) of the Complaint. Plaintiffs' claim under § 4111 is indistinguishable from the FLSA claim. The pertinent portion of the Ohio statute provides:

> (A) An employer shall pay an employee for overtime at a wage rate of one and one-half times the employee's wage rate for hours worked in excess of forty hours in one workweek, in the manner and methods provided in and subject to the exemptions of section 7 and section 13 of the "Fair Labor Standards Act of 1938," 52 Stat. 1060, 29 U.S.C.A. 207, 213, as amended.

R.C. § 4111.03(A). Thus, the Court's rulings with respect to the FLSA claim apply also to Plaintiffs' claim under § 4111.

With respect to Plaintiffs' claim for violation of R.C. § 4113.15(B), the statute provides:

> (B) Where wages remain unpaid for thirty days beyond the regularly scheduled payday or, in the case where no regularly scheduled payday is applicable, for sixty days beyond the filing by the employee of a claim or for sixty days beyond the date of the agreement, award, or other act making wages payable and no contest . . . court order or dispute of any wage claim including the assertion of a counterclaim exists accounting for nonpayment, the employer, in addition, as liquidated damages, is liable to the employee in an amount equal to six per cent of the amount of the claim still unpaid and not in contest or disputed or two hundred dollars, whichever is greater.

In view of the Court's determination as to liability under both the FLSA and § 4111, Plaintiffs' claim that they are entitled to payment under § 4113.15(B) is meritorious.

The Court notes that Plaintiffs' Complaint also asserts claims for breach of contract and promissory estoppel under Ohio law. Plaintiffs fail to address these claims in their briefing. The Court therefore treats the claims as abandoned.

22

## IV.

In light of the foregoing, the Plaintiffs' Motion for Partial Summary Judgment (**Doc. #29**) is **GRANTED in part and DENIED in part.**  Plaintiff Maynard's Motion for Summary Judgment on Defendant's counterclaim (**Doc. #27**) is **MOOT** in view of the dismissal of the counterclaim, (Doc. #28).  The Defendant's Motion for Partial Summary Judgment (**Doc. #31**) is **DENIED**. The Clerk shall remove these motions from the Court's pending motions list.

This case shall be set for Trial by separate Order.

**IT IS SO ORDERED.**

3-29-2006
**DATE**

_____
EDMUND A. SARGUS, JR.
**UNITED STATES DISTRICT JUDGE**